CYNTHIA J. WOOLLEY, ISB No. 6018
cynthia@ketchumidaholaw.com
LAW OFFICES OF CYNTHIA J. WOOLLEY, PLLC
P.O. Box 6999
200 West River Street, Suite 301
Ketchum, ID 83340
(208) 725-5356
Fax: (208) 725-5569

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**FOR THE FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **SHANNA R. LOCKER,** | Case No.:  1:11-cv-00168 |
| Plaintiff, | |
| vs. | **COMPLAINT**<br>**and**<br>**DEMAND FOR JURY TRIAL** |
| **HOW-SOEL, INC., dba LOGAN'S FOODTOWN and Does 1-50,** | |
| Defendants. | |

Plaintiff, Shanna R. Locker, by and through her attorney Cynthia J. Woolley of the Law Offices of Cynthia J. Woolley, PLLC, for her Complaint against the Defendant, How-Soel, Inc. d/b/a Logan's Foodtown and Does 1 through 50, complains and alleges as follows:

COMPLAINT
-1-

## PARTIES

1. Plaintiff is an individual residing in Twin Falls County, State of Idaho.

2. Defendant How-Soel, Inc, dba Logan's Foodtown ("Logans") is an Idaho Corporation located at 130 Hwy 30, Filer, Twin Falls County, State of Idaho and is authorized to transact business in the State of Idaho.

3. Plaintiff is unaware of the true names and capacities, whether individual or otherwise, of Defendant DOES 1 through 50, inclusive, and therefore sues those defendants by fictitious names. Plaintiff is informed and believes, and on that basis alleges, that these DOE defendants, and each of them, are in some manner responsible and liable for the acts and/or damages alleged in this Complaint, and that among these DOE defendants are supervisory employees and employers who supervised or employed Plaintiff. Plaintiff will amend this Complaint to allege the DOE defendants' true names and capacities when they have been ascertained.

## JURISDICTION AND VENUE

4. This is an action for injunctive relief, damages and equitable relief arising under the violation of the Americans With Disabilities Act, 42 USC §§ 12101-12213; and the Idaho Human Rights Act, Idaho Code §§ 67-5901, *et seq*.

5. This Court has subject matter jurisdiction over Plaintiff's claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over the state causes of action pursuant to the doctrine of pendent jurisdiction because each of these claims arises out of the same facts and actions ad the federal claims. Supplemental jurisdiction over Plaintiff's additional claims exists pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the causes of action alleged in this Complaint arise out of Defendant' activities in Jerome County, Idaho which is within this district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

7. Plaintiff timely filed a charge of discrimination with the Idaho Human Rights Commission and the United States Equal Employment Opportunity Commission claiming discrimination on the basis of disability.

8. The Idaho Human Rights Commission and the Equal Employment Opportunity Commission each issued a Notice of Right to Sue.

9. This Complaint is filed within 90 days of the issuance of the Notices of Right to Sue.

10. Accordingly, all administrative remedies required prior to filing suit have been exhausted.

**FACTS**

11. Plaintiff Shanna R. Locker was employed by Defendant How-Soel, Inc. dba Logan's Foodtown from on or about July 11, 2008 until on or about June 6, 2009.

12. Plaintiff has multiple sclerosis, commonly referred to as "MS."

13. MS is a disease in which the body's immune system attacks the central nervous system, repeatedly injuring the nerves and ultimately causing them to degenerate. MS has no cure and can often lead to partial or complete paralysis, but medication can slow the disease's progression.

14. Plaintiff has numbness in her right leg and foot, a bad tremor in her left hand, problems with her eyesight and balance, and dizziness.

15. Because Plaintiff's right foot is numb, she has had to re-learn how to walk on her right foot.

16. Plaintiff began working for Logan's, a grocery store, as a part-time cashier. Within about two weeks of her hire, she was training to be a Closing Manager.

Plaintiff was subsequently promoted to Closing Manager and worked as Cashier/Closing Manager until June 1, 2009.

17. At Plaintiff's hiring interview with Defendant's manager, Brian Cruz ("Cruz") in July 2008, Plaintiff told Cruz that she had MS. Plaintiff told Cruz she had had MS for 14 years and had physical limitations. Plaintiff told Cruz she had numbness in her right leg and foot, a bad tremor in her left hand, problems with her eyesight, problems with balance and dizziness.

18. The Defendant never asked her for any medical certification of any kind concerning her limitations due to MS.

19. From this hiring interview and from observing her, Cruz knew that Plaintiff had limitations due to MS including the inability to do heavy lifting and reaching.

20. When she worked produce, Defendant accommodated Plaintiff's disability by allowing other employees to help her moving heavy boxes.

21. Because of MS, Plaintiff could not do "freight." Freight entailed moving lifting and moving boxes, stocking shelves, standing on a step-stool and reaching overhead. Reaching overhead would cause Plaintiff to fall because of her balance problems.

22. Defendant was aware that Plaintiff was unable to do freight and accommodated her disability by not requiring her to do freight.

23. The co-owner and manager of Logan's, Greg Jarolimek, ("Jarolimek") knew about Plaintiff's disability and her limitations.

24. Jarolimek originally accommodated Plaintiff's MS by scheduling her to work on days that did not include freight and by allowing another employee to do certain tasks for her.

25. Plaintiff did a fine job for Logan's and was considered one of the better "produce people." There was no problem with Plaintiff's job performance.

26. Plaintiff went on a six-week medical leave in April 2009.

27. About two weeks before she returned to work, Plaintiff learned from Logan's that the deli manager position might be available soon. She expressed interest in that position.

28. Plaintiff was not given a job description or offered the position. At the time, her only knowledge of the duties of that job came from Megan, the previous deli manager. She had no idea that Megan did freight. She knew Megan did ordering and made pizza, salads and sandwiches.

29. A few days before she returned to work, Plaintiff had her six-week checkup with her surgeon. He released her to return to work part-time "as tolerated."

30. Plaintiff was given the deli manager job beginning on June 1, 2009.

31. June 1, 2009 was the last day Plaintiff actually worked on the clock.

32. Plaintiff was scheduled to work 10:00 to 2:00 on Monday, June 1, 2009 and 10:00 to 2:00 on Thursday, June 4, 2009. Freight days are Monday and Thursday.

33. On June 1, 2009, Plaintiff arrived at work and went up to the office. Mr. Jarolimek told her to do inventory on the deli and the prepared food in the beer cooler and then start putting away a pallet of deli freight.

34. Plaintiff started on inventory but did not finish because it required her to stand on a milk crate and put items away. Because of her MS, she was having difficulty standing and putting items away without falling. She could not finish because of limitations due to MS.

35. Barbara Chandler ("Chandler"), assistant manager, was also in the office on June 1, 2009. She wrongly assumed that the reason that Plaintiff could not do her job was because of her hysterectomy surgery.

36. Jarolimek was under the same impression because he heard it from someone who heard it from Ms. Chandler.

37. Plaintiff went to Cruz and told him that she could not continue to do the stocking of the deli freight because it required her to stand on a milk crate and she feared she was going to fall.

38. On Thursday, June 4, 2009, Plaintiff went in to work and spoke to Jarolimek. Plaintiff said, "Good morning, what would you like me to do today?" Jarolimek responded, "Just what is it you can do?"

39. Plaintiff was shocked and did not respond. She felt like he slugged her.

40. Jarolinek then said to Plaintiff, "You are a liability to us, if you fall and get hurt, we are in trouble."

41. Jarolinek asked Plaintiff for a note from her surgeon.

42. Plaintiff was not scheduled to work on Friday, June 5 or Saturday June 6, 2009.

43. On Saturday morning, June 6, 2009, Plaintiff went into Logan's to check to see when she was scheduled to work.

44. Cruz asked Chandler, another employee and Plaintiff to come into the back room.

45. Cruz read from a small piece of paper scribbled with notes the job duties for deli manager.

COMPLAINT
-6-

46. That was the first time anyone had told Plaintiff everything the job entailed. This was the first time Plaintiff learned that the deli manager position entailed freight.

47. Plaintiff asked Cruz if the Cashier/Closing Manager position was still available. Cruz said, "No."

48. Plaintiff asked Cruz if she could do the deli manager job without freight. Cruz said the job is 80% freight.

49. She asked if she could do the job without freight. Cruz said, "No."

50. Cruz then terminated Plaintiff's employment.

## FIRST CAUSE OF ACTION
### Americans With Disabilities Act, 42 USC §§ 12101-12213

51. Plaintiff repeats the allegations set forth above in paragraphs 1 through 50, incorporates them herein by reference, and alleges as follows:

52. Logan's, at all times material herein, employed over 15 employees.

53. At all times material herein, Plaintiff was a qualified individual and able to perform the primary functions of her position with or without reasonable accommodation.

54. Plaintiff, at all material times herein, suffered from a disability - Multiple Sclerosis - which constituted a substantial limitation to Plaintiff and which was demonstrable by medically accepted clinical or laboratory diagnostic techniques.

55. Plaintiff requested reasonable accommodation for her disability which would not have unduly disrupted or interfered with the Defendant's normal operations, threatened the health or safety of Plaintiff or others, contradicted a business necessity of Defendant or imposed undue hardship on the Defendant.

56. Beginning at her hiring interview, Plaintiff requested reasonable accommodation for her disability, including, but not limited to: (1) assistance with heavy

lifting; (2) no freight duties; (3) no standing on crates or ladders and no overhead reaching; and (4) return to her position of cashier/closing manager after her medical leave.

57. Defendant transferred, discharged, failed to reinstate, refused to provide reasonable accommodation and otherwise discriminated against Plaintiff with respect to compensation and the terms, conditions, or privileges of employment because of her disability.

58. Defendant discriminated against Plaintiff because of her disability with respect to the terms, conditions and privileges of employment when it (a) refused to accommodate her disability; (b) transferred her to a position that Defendant knew she could not perform due to her disability; (c) not returning her to the job she had before her medical leave; (d) refusing to give her a reasonable period to provide medical certification of her disability; (e) failing to engage in the interactive dialog with Plaintiff to determine what reasonable accommodation would permit her to perform the primary functions of her position; and (f) terminating Plaintiff's employment because of her disability; in addition to other actions and inactions described in this Complaint.

59. As a proximate result of Defendant's unlawful conduct in violation of the Americans With Disabilities Act, Plaintiff has been damaged in an amount to be determined at trial.

60. Defendant intentionally violated the ADA and acted with malice and/or reckless indifference to the Plaintiff's federally protected rights entitling Plaintiff to punitive damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**Idaho Human Rights Act**
**Idaho Code §§ 67-5901,** *et seq***.**

61.     Plaintiff repeats the allegations set forth above in paragraphs 1 through 60, incorporates them herein by reference, and alleges as follows:

62.     The acts of Defendant as alleged in the First Cause of Action above constitute a violation of the Idaho Human Rights Act, Idaho Code §§ 67-5901, *et seq*.

63.     Defendant employed five or more employees within the State of Idaho at all material times herein.

64.     As a proximate result of the unlawful actions and inactions of Defendant described herein, Plaintiff has been damaged in an amount to be determined at trial.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial.

## **PRAYER**

WHEREFORE, plaintiff prays for judgment against the defendant as follows:

1.  Statutory damages for lost wages (back pay and front pay), benefits, and other compensation, plus interest thereon at the statutory rate, pursuant to 42 USC § 1981a(b)(2), and Idaho Code §§ 67-5901, *et seq.* and other applicable statutes.

2.  Equitable relief in the form of reinstatement, back pay and/or front pay, as the court deems appropriate, pursuant to 42 USC § 1981a(b)(2) and other applicable statutes.

3.  Compensatory damages including lost wages, back pay, front pay and benefits according to proof;

4.  Non-pecuniary losses to Plaintiff, including damages for emotional pain, stress, grief, anxiety, loss of self esteem, inconvenience, mental anguish, humiliation, stigma, and loss of enjoyment of life;

5.  Punitive damages for intentional violation of the ADA and malice and reckless indifference to Plaintiff's federally protected rights pursuant to 42 USC § 1981a(b)(1) and other applicable statutes;

6.    Attorney's fees, litigation expenses, expert witness fees, and costs of this action, pursuant to 42 USC §§ 12117(a), 12133, 2000e-5(k); 29 USC § 794a(b), and other applicable statutes;

7.    For prejudgment and post judgment interest; and

8.    Such other relief as this Court may deem just and proper.

Dated this 20th day of April, 2011.

LAW OFFICES OF CYNTHIA J. WOOLLEY, PLLC

*/s/ Cynthia J. Woolley*
Cynthia J. Woolley
Attorney for Plaintiff